54 CCPA

**Application of Branko PERKIC.**

**Patent Appeal No. 7687.**

United States Court of Customs and Patent Appeals.

Dec. 8, 1966.

Samuel Stearman, Washington, D. C., for appellant.

Joseph Schimmel, Washington, D. C., (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals [1] affirming the rejection of claims 1, 3, and 8, all remaining claims in application serial No. 119,810, filed June 27, 1961, for "Coating and Method of Making Same."

All claims are to a method of forming a protective coating on a roof, for example, composed of an aqueous emulsion of bitumen and inorganic fibers, such as asbestos or glass fibers, by spraying the bitumen and fibers simultaneously in such a way that the fibers are laid on the surface in a "jackstraw pattern" and are coated with the emulsion just before they land on the surface like a pile of jackstraws.

The description of the method is entirely verbal, there being no drawing in the case, and no specific apparatus for

---

[*] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Examiners-in-Chief Magil and Lidoff and Acting Examiner-in-Chief Rosdol, the latter writing the opinion.

carrying out the method is described except by reference to an "elongated tubular passageway," referred to in the claims, which is part of "gun apparatus" associated with a "spray nozzle or nozzles mounted thereon" and a "cutter" for chopping up the fibers from continuous lengths of glass fiber roving. The allegedly important "jackstraw pattern" is further defined in the claims, of which claim 1 is illustrative

1. The method of forming a protective coating on a roof or other surface exposed to the weather, which comprises blowing a stream of inorganic fibers of a length of the order of about ⅛ inch to two inches toward said surface through an elongated tubular passageway under the impelling force of compressed air while separately but simultaneously spraying an aqueous emulsion of bitumen toward said surface so that said fibers become coated with said emulsion after they are discharged from said passageway and just before they strike said surface, said blowing of the fibers being effected with sufficient impelling force to deposit the thus coated fibers on said surface in a jackstraw pattern characterized by having said fibers crossing each other heterogeneously and disposed in planes substantially parallel to the plane of said surface with few, if any, of said fibers entending in planes at any substantial angle to the plane of the coating, said emulsion being of the type which forms a static film upon drying thereof, said fibers being blown at a rate relative to the rate of spraying of said emulsion to provide about 3 to 4 pounds of said fiber for each 30 pounds of bitumen in said coating, and continuing said blowing of said fibers and simultaneous spraying of said emulsion until there has been deposited on said surface a layer of said fibers and said emulsion which upon drying of the aqueous content of said layer will form a monolithic coating of a thickness ranging upward from 25 mils to about one inch.

While claim 1 describes the fibers simply as inorganic and of a length from ⅛ to 2 inches, claim 3, dependent on claim 1, specifies glass fibers of a length of about ¾ inch. Independent claim 8 specifies that the covering is for a roof and that it is made in situ, specifies glass fibers of about ¾ inch length, the fiber to bitumen ratio of claim 1, and includes the step of letting the coating dry.

The references relied on are:

| Beatty et al. | 1,881,345 | Oct. | 4, | 1932 |
| Thompson | 2,850,421 | Sept. | 2, | 1958 |
| Schuetz et al. | 2,893,889 | July | 7, | 1959 |
| Kozma | 3,025,195 | Mar. | 13, | 1962 |

The rejection is based on 35 USC 103 and is that the claimed invention is obvious in view of Kozma, taken with either Schuetz et al. or Thompson.

Kozma discloses apparatus for spraying chopped glass fibers made from glass roving together with a resinous binder, the binder being sprayed so as to intercept the fibers just before they are deposited on the surface to be coated. Kozma describes the positioning of his fibers on the surface as "evenly distributed random orientation." He uses that description to distinguish undesired prior art orientation "in generally the same direction or * * * in piles or windrows." Appellant's principal argument is that this Kozma random orientation is not his claimed "jackstraw pattern."

Both Thompson and Schuetz et al. are cited for disclosure of fiber glass reinforced bitumens, Thompson applying the product to a roof by spraying, the ingredients being mixed in the spray nozzle before ejection, as distinguished from appellant's mixing outside the nozzles.

In his final rejection, the examiner used Thompson as his main reference. Beatty et al. was cited as of interest for its showing of the spraying of sand and asphalt emulsion, the emulsion being projected from two spray heads alongside the nozzle from which the stream of sand emerges so as to coat the sand particles just before their deposition.

While there are a number of limitations in the claims which distinguish from the references in terms, only one of them requires consideration as it is the only one relied on by appellant. The board said:

> Appellant's arguments, when stripped down to essentials, is centered around the following terminology found in claim 1:
>> "* * * said blowing of the fibers being effected with sufficient impelling force to deposit the thus coated fibers on said surface in a jackstraw pattern characterized by having said fibers crossing each other heterogeneously and disposed in planes substantially parallel to the plane of said surface, with few, if any, of said fibers extending in planes at any substantial angle to the plane of the coating, * * *."

Claim 8 contains an equivalent expression with slightly different verbiage.

> Specifically, appellant contends the Kozma's "random orientation" of the deposited fibers is not equivalent to appellant's "jackstraw pattern," * *.

Appellant similarly argues in this court. As he says in his brief:

> * * * the principal issue in the case involves the difference between the "jackstraw" pattern called for in the claims and the "random orientation" referred to in the Kozma patent * *.

The board gave careful attention to a variety of arguments by appellant as to why Kozma's random orientation was not his jackstraw pattern but came to the conclusion "that if appellant's process results in a 'jackstraw pattern' so will Kozma's operation * * *."

We have likewise given careful consideration to appellant's arguments and to the disclosures of the application and the references and come to the same conclusion. It would serve no useful purpose to review all the arguments. Appellant's principal effort is directed to trying to persuade us that he achieves a fiber deposit in which he avoids "wicking action" which allegedly would result from a certain portion of the fibers standing more or less on end, so to speak. How many may do so and still have a product within the claims, which expressly permit a "few" such fibers, has not been made clear. The problem of definition of fiber positioning in this case strikes us as much like the problem of describing the position of the cuttings which fall from one's lawnmower onto the sidewalk, to use an analogy not heretofore used in this case. Kozma would call it "random orientation" and appellant would call it a "jackstraw pattern," going on to specify "with few, if any, of said fibers [blades of grass] extending in planes at any substantial angle to the plane of the coating [sidewalk]."

We are unable to find anything inherent in the operation of the Kozma apparatus which would cause it to deposit fibers in a pattern different from that produced by the process which appellant describes and claims.

The use in Kozma of aqueous bitumen emulsion in place of his resin binder would, in our opinion, be entirely obvious from the disclosures of the secondary references.

Finding no error in the decision of the board, it is affirmed.

Affirmed.